UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW EDWARD MOORE,<br><br>　　　　　　　　　　　Defendant. | Case No.:  21-CR-02565-GPC-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE WITHOUT PREJUDICE** |

On December 6, 2024, Defendant Andrew Edward Moore ("Moore") filed the instant motion seeking a reduction of his sentence under 18 U.S.C. 3582(c)(1)(A)(i). ECF No. 76, ("Motion").  On March 28, 2025, the United States filed a response in opposition to Defendant's motion.  ECF No. 83, ("Response").  For the reasons set forth below, the Court **DENIES** Moore's motion for compassionate release **WITHOUT PREJUDICE**.

## BACKGROUND

On May 3, 2022, Moore pled guilty to Possession of Ammunition as a Felon in violation of 18 U.S.C. § 922(g)(1), Count I, and Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), Count II.  ECF No. 40.  At the

1

time of sentencing, the Government recommended 108 months in custody, ECF No. 50, Moore recommended 60 months, ECF No. 52, while Probation recommended 135 months, ECF No. 44, ("Pre-Sentence Report").[1] On December 9, 2022, the Court sentenced Moore to 70 months to run concurrently as to Counts I and II, followed by 3 years of supervised release. ECF No. 57. As a condition of his plea, Moore forfeited the firearm and ammunition involved in his offense. ECF No. 40. On September 20, 2024, this Court amended Moore's judgment to 66 months and 13 days on each count to credit the 107 days Moore spent in county custody. ECF Nos. 70, 71. Moore is currently serving his term at Long Beach RRM and has a projected release date of April 12, 2026.[2] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (last visited July 18, 2025).

Moore is currently 44 years old. Pre-Sentence Report at 2.[3] He has a history of substance abuse, drug addiction, and criminal conduct, including an arrest in 2013 and a conviction in 2021 for Injury and Battery of a Spouse on a Bree Moore ("Mrs. Moore"). *See id.* at 11-13. Moore and Mrs. Moore have been married since 2009 and have had some separations since then. *See id.* at 12, 14; Motion at 5. Moore and Mrs. Moore have one daughter who was born in 2013. *Id.;* Pre-Sentence Report at 14. In the 2022 Pre-Sentence Report, Mrs. Moore was noted to have "another child from a prior relationship who lives with her… (age 15)." Pre-Sentence Report at 14. Moore reported that he was

---

[1] Probation's recommendation was based on an erroneous Pre-Sentence Report. Response at 2 n. 1.

[2] The Court takes judicial notice of the BOP website and information contained therein. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *citations omitted* (the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed").

[3] Page numbers based on CM/ECF pagination.

"'in the final stages' of adopting [her] since he has raised her since age one." *Id.* In 2022, Moore was also noted to have "reported two siblings who live in Santee." *Id.*

Mrs. Moore is currently 36 years old. Motion at 2. Moore declared that in 2023, while Moore was incarcerated, Mrs. Moore began suffering from pain, experienced severe falls, and was diagnosed in 2024 with "Chronic Inflammatory Demyelinating Polyneuropathy" ("CIDP"). *Id.* at 5. Mrs. Moore "was independent, employed, and a mom involved in her daughter's life, until, at the age of 35, that all drastically changed." *Id.* at 3. According to Moore, "this progressive disease has led Mrs. Moore to a situation in which she desperately needs her husband's help to live safely in her own home, so that she doesn't fall again, and suffer even more injuries than last time." *Id.* On September 26, 2024, Moore submitted an inmate request to the BOP for compassionate release, received no response, and thusly exhausted his administrative remedies.[4] Motion at 4, 8. On December 6, 2024, Moore filed the instant Motion for compassionate release, seeking a reduction of his sentence under 18 U.S.C. 3582(c)(1)(A)(i) for family circumstances.

## LEGAL STANDARDS

### A. Judicial Notice

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court *sua sponte* takes judicial notice of the federal dockets and filings available through the CM/ECF and PACER systems, including the Pre-Sentence Report because it is a public record and government document attached to the docket. *See United States v. Castelli*, 550 F. App'x 91, 94 (3d Cir. 2014) (stating "as the District Court correctly noted, it could take judicial notice of [information contained in a PSR]"); Fed. R. Evid. 201(b). A court may take judicial notice of its own records, *see, e.g., Rand v. Rowland*, 154 F.3d 952, 961 (9th Cir.

---

[4] It is undisputed that Moore has met the administrative exhaustion requirement of 18 U.S.C. § 3582(a)(1)(C). *See* Motion at 4, 8 (confirmation of Moore's request for compassionate release to the BOP); Response at 3 n. 3 (Government response in agreement).

1998) (en banc); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).  However, the Court will not take judicial notice of the truth of any disputed facts contained in the Pre-Sentence Report.  *Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir. 2001).

The Court notes that Moore submitted an Objection to Presentence Investigation Report, ECF No. 53, but objected only to the incorrectly calculated criminal history score, so the Court is entitled to accept the other reported information as "findings of fact."  Fed. R. Crim. P. 32(i)(3)(A).

### B. Leave for New Motion or Reconsideration

If a defendant's previous motions for compassionate release are denied without prejudice, they remain "free to file a new motion in the district court after exhausting [their] administrative remedies with the BOP."  *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).  A defendant may also motion for reconsideration with new evidence or relevant information.  *See United States v. Hald,* 8 F.4th 932, 939-40 (10th Cir. 2021) (prisoner allowed to motion for reconsideration with new evidence of medical affidavits substantiated claimed conditions after denied motion for compassionate release).  If filed within 28 days of denial, courts "construe a motion to reconsider a denial of compassionate release as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)."  *United States v. Garrett*, 15 F.4th 335, 349 (5th Cir. 2021).  Leniency is encouraged, for "pro se complaints and motions from prisoners are to be liberally construed."[5]  *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000).

### C. Compassionate Release

Generally, a federal court "may not modify a term of imprisonment once it has been imposed," *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18

---

[5] Though Moore is represented by counsel through the Federal Defenders of San Diego, ECF No. 79, both of Moore's filings in the docket before the court (Motion; ECF No. 77) preceded such assistance of counsel and were filed pro se.  Moore's counsel has not filed any reply or documents on Moore's behalf.

U.S.C. § 3582(c)), except "in limited circumstances set out by federal statute," *United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022). Moore seeks to modify his sentence under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act. In relevant part, § 3582(c)(1)(A) permits a court to modify a term of imprisonment:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf ... may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved potion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; …
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Previously, the Ninth Circuit held that policy statement U.S.S.G. § 1B1.13 governed only § 3582(c)(1)(A) motions brought by the Director of the Bureau of Prisons ("BOP"). *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (finding the "current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by defendant"). However, amendments to § 1B1.13, effective November 1, 2023, reflect that the policy statement is now applicable to motions filed by defendant and the BOP. *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *see* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of Bureau of Prisons *or the defendant* ..."

(emphasis added)). Therefore, policy statement § 1B1.13 is binding on this Court's consideration of Moore's motion for compassionate release.

Under § 1B1.13(b), as amended, there are various extraordinary and compelling circumstances which may warrant a compassionate release, and § 1B1.13(b)(3) identifies several family circumstances which may qualify. Specifically, § 1B1.13(b)(3)(A) identifies "[t]he death or incapacitation of the caregiver of the defendant's minor child[,]" and § 1B1.13(b)(3)(B) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

Furthermore, § 3553(a) provides a number of factors to consider. Those factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide ... medical care, or other correctional treatment…"

18 U.S.C. § 3553(a). Lastly, § 1B1.13(a)(2) instructs that prior to granting a motion for compassionate release, a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Accordingly, the questions before the Court are (1) whether Moore has established "extraordinary and compelling" reasons consistent with the policy statement to justify a reduction in sentence, and, if he has, (2) whether the § 3553(a) factors weigh against sentence reduction and (3) whether Moore is a danger to any person or the community at large.

/ / /

## DISCUSSION

### A. Extraordinary and Compelling Reasons

Moore argues that family circumstances through Mrs. Moore's incapacitation and absence of other caregivers qualify as extraordinary and compelling reasons. Motion.

The government argues that Moore has not produced sufficient evidence for the alleged incapacitation of Mrs. Moore or for the alleged unavailability of other caregivers. Response at 4-5.

The "[d]efendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release." *United States v. Kanohokula*, 572 F. Supp. 3d 895, 901 (D. Haw. 2021). Under the relevant provisions in § 1B1.13(b)(3)(A) and § (B), an extraordinary and compelling reason may be found when there is "incapacitation of the caregiver of the defendant's minor child[,]" or "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

#### 1. Incapacitation

Moore argues that Mrs. Moore is incapacitated because of her CIDP, which has resulted in her unemployment, frequent fainting and falling, and general inability to care for herself or her daughter. Motion at 5. Moore's claims of incapacitation are substantiated with pictures of an "After-Visit Summary" and affidavits from Moore, Mrs. Moore, and Moore's mother. *Id.* at 5-10.

The government argues that Moore has failed to provide adequate medical records for Mrs. Moore's condition and failed to specify which daily functions Mrs. Moore requires assistance with. Response at 5. The government claims that, even taking Moore's assertions as fact, Mrs. Moore's condition does not meet the threshold for incapacitation in the sense that she is not presently "incapable of caring for [herself]." *Id.*

Incapacitation must be adequately proven by the defendant through medical records or other forms of supporting evidence. *See, e.g., United States v. Grummer*, 519 F. Supp. 3d 760, 762 (S.D. Cal. 2021) ("as the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction"); *United States v. Plaketta*, 2022 WL 17363886 at *3 (S.D. Cal. Dec. 1, 2022) (where inmate did not "provide[] any verifiable medical documentation of his wife's condition"); *United States v. Doolittle*, 2020 WL 4188160 at *3 (D.N.J. July 21, 2020) ("Doolittle has presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated"). However, suffering from medical conditions and struggling to maintain daily activities does not itself constitute incapacitation. *See, e.g., United States v. Tamariz*, 2020 WL 7770914 at *2 (S.D. Cal. Dec. 30, 2020) (after a leukemia diagnosis and chemotherapy treatment, though "Defendant's evidence indicates that his wife is struggling, it does not establish that his wife is incapacitated by her medical conditions, such that she is completely unable to care for herself or her children, one of whom is an adult, or that no one else is available to assist her") (collecting cases); *United States v. Woodworth*, 2024 WL 4520345 at *3 (S.D. Cal. Oct. 17, 2024) (records sufficiently showed the claimed medical condition, but did not show incapacitation). "'Incapacitated' has been interpreted to mean 'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.'" *United States v. Nassida*, 2020 WL 4700845 at *3 (W.D. Pa. Aug. 13, 2020) (quoting *United States v. Collins*, 2020 WL 136859 at *4 (D. Kan. Jan. 13, 2020)); *see also United States v. Bautista*, 2024 WL 3014637 at *3 (S.D. Cal. June 14, 2024) (holding incapacitation to mean "lack[ing] the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate technological assistance").

Moore's allegations of Mrs. Moore's condition are not supported by enough evidence to show incapacitation. Moore indicates that "[Mrs. Moore] has had 2

documented falls," that "[t]he medical records attached show clearly that Mrs. Moore's disability level is rapidly elevating," and that she has visited her primary care provider multiple times. Motion at 3. However, Moore only attached a single "After-Visit Summary" indicating diagnosis and treatment for an "initial encounter" of a "Traumatic injury of head" or "head laceration," related to a fall, but not CIDP. *Id.* at 3, 9. CIDP is only mentioned once on the second page alongside a myriad of other conditions, including "Guillain-Barre syndrome," which Moore also attests that "[Mrs. Moore's] neurologists ruled out Guillian-Borre'" [sic]. *Id*. at 10; 2. Here, just like in *Plaketta,* Moore fails to "provide[] any verifiable medical documentation of his wife's condition." *Plaketta*, 2022 WL 17363886 at *3. Moore admits that the motion includes only a "basic summary of diagnosis," and offers that "[t]here are extensive medical records…available for your review," ECF No. 77 at 2, but has not filed or attached any such medical records. Moore claims that Mrs. Moore "cycled through medications," "was sent to various specialists," and "a treatment plan was developed after several more visits with other specialists were completed," but just like the inmate in *Doolittle*, "has presented no medical documentation or other competent evidence demonstrating that his wife is incapacitated." Motion at 2; *Doolittle*, 2020 WL 4188160 at *3. As such, Moore has not produced enough evidence to support his allegations of Mrs. Moore's CIDP and medical condition.

Furthermore, even assuming *arguendo* that all of Moore's claims are true, Mrs. Moore's condition would not meet the level of incapacity required for incapacitation. Although the affidavits say that Mrs. Moore is "unable to drive herself to her prescribed physical therapy sessions," and that "she reluctantly asks her 11-year-old daughter to help with the bathing and cleaning tasks," Motion at 3, the affidavits also claim that Mrs. Moore "is barely able to presently complete" her "activities of daily living," and that "[s]he has physical therapy twice a week, that she struggles to get to." *Id.* at 5. Like in

*Tamariz* where the inmate's wife was "struggling," but not "completely unable to care for herself or her children," here Mrs. Moore is claimed to ultimately be capable, even if only "barely" and through "struggles," of conducting her daily living activities and weekly medical appointments. *Tamariz*, 2020 WL 7770914 at *2; Motion at 5. Additionally, Moore makes no claims on the inability of Mrs. Moore to attend to their 11-year-old daughter's care or education. Furthermore, the affidavits assert Moore would help by "install[ing] safety devices in their home," and "install handicap bars in the shower," Motion at 6-7, suggesting that Mrs. Moore could benefit from "appropriate technological assistance" to "meet essential requirements for physical health, safety, or self-care." *Bautista*, 2024 WL 3014637 at *3. As such, even as alleged by Moore and the affidavits, Mrs. Moore's difficulties do not rise to the level of incapacitation.

      Therefore, because Moore has not provided supporting medical records, and because Mrs. Moore can care for herself, the Court finds that Mrs. Moore's medical conditions do not qualify as incapacitation to warrant compassionate release. Though the Court acknowledges the increased difficulties and struggles Mrs. Moore and her daughter face with Moore's absence, "[u]nfortunately, family members often are the most hurt when a parent or spouse commits a crime." *United States v. Schmuel*, 2022 WL 623914, at *3 (S.D. Cal. Mar. 2, 2022).

      2. <u>Only Available Caregiver</u>

      Assuming *arguendo* that Mrs. Moore is incapacitated and incapable of self-care, Moore argues that he is the "only available caregiver" to Mrs. Moore because she lives alone with their 11-year-old daughter, and thus a compassionate release is warranted. The affidavits claim that Mrs. Moore "needs help with her activities of daily living…which she is barely able to presently complete," and that "there is literally no one else to help." *Id.* at 5-6. Moore also asserts that "[a]ffording the type of paid caregiver necessary…is out of the question," and that Mrs. Moore's "father lives somewhere

unknown and her mother is deceased. She has siblings, but they live out of state." *Id.* at 3, 5.  Moore's mother suggests that she is "unable to get over to [Mrs. Moore's] house because [Moore's mother is] raising [her] two adopted granddaughters." *Id.* at 7.  Moore also indicated that his father had passed away on December 22, 2024.  ECF No. 77 at 1.

The government argues that Moore has not established that he is the only available caregiver for Mrs. Moore, because Moore did not address the existence of Mrs. Moore's other daughter who lived with her at the time of the Pre-Sentence Report and would now be 18-years-old.  Response at 6.  The government also claims that Moore fails to specifically address insurance to obtain professional caregiving or any skills or training required to show he is able to administer such care. *Id* at 7.

"[A] critical consideration…is that no person other than the defendant is available to serve as a caretaker of a minor or incapacitated immediate family member." *United States v. Goldberg*, 2020 WL 1853298 at *4 (D.D.C. Apr. 13, 2020).  "To establish the extraordinary and compelling requirement for a sentence modification, the defendant must make 'a robust evidentiary showing that defendant is the only available caregiver.'" *United States v. Bragg*, 2021 WL 662269 at *2 (S.D. Cal. Feb. 19, 2021) (quoting *United States v. Richardson*, 2020 WL 2200853 at *2 (E.D.N.C. May 6, 2020)).  If there are family members or others that could be potential caregivers, the defendant must acknowledge why they are inadequate. *See, e.g., United States v. Cruz-Rivera*, 2020 WL 5993352 at *7 (E.D.P.A. October 9, 2020) (defendant failed to show unavailability or present whereabouts of other family members whose existence was previously reported); *United States v. Rice*, 2023 WL 6048777 at *3 (N.D. Cal. Sept. 14, 2023) (defendant failed to show unavailability of sons as caretakers for their mother despite "both sons work full time, and both have families and households of their own").

Moore has failed to sufficiently "make a robust evidentiary showing" that he "is the only available caregiver." *Bragg*, 2021 WL 662269 at *2.  Much like in *Cruz-Rivera*

where the inmate made "no mention of his family or others that could potentially care" or "their whereabouts," here Moore has not attested or clarified the unavailability of his two in-state siblings or Mrs. Moore's other, possibly-now-adult, daughter. *Cruz-Rivera*, 2020 WL 5993352 at *7. Moore also makes no efforts to elaborate on his inability to afford professional care in terms of government supplied medical care, insurance, or installation of various assistive technologies. Furthermore, like in *Rice* where simply showing that "both sons work full time, and both have families and households of their own" did not sufficiently rule them out as suitable caretakers, here Moore also fails to show why either Moore's mother or Mrs. Moore's siblings cannot, or would not, relocate themselves or Mrs. Moore to accommodate for her condition and care, even if they reside in other locations with other responsibilities. *Rice*, 2023 WL 6048777 at *3. Though the affidavits claim that Moore is needed as Mrs. Moore's sole caregiver to "keep her safe from more falls, to drive her to her doctor appointments, and to install safety devices in their home," Motion at 7, Moore does not provide any evidence indicating any level of experience with caregiving on the level he alleges Mrs. Moore needs, or with installation of safety devices that could not be commissioned from a professional. Therefore, because Moore has not made a robust evidentiary showing to address Mrs. Moore's adult daughter, his or Mrs. Moore's siblings, the unavailability of professional assistance, or his ability to deliver care, Moore has not shown that he is the only available caregiver for Mrs. Moore. "The Court recognizes that the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid, but Defendant's application does not meet the criteria for compassionate release under the law." *Doolittle*, 2020 WL 4188160 at *2.

The Court acknowledges and is deeply sympathetic to Mrs. Moore's difficulties. However, the instant motion and evidence in the record do not adequately show Mrs. Moore's circumstances in enough detail to constitute incapacitation and warrant Moore's

compassionate release. As such, the Court will deny without prejudice and offer Moore leniency to timely file new motions for compassionate release or reconsideration after re-exhausting administrative remedies if Moore could cure his evidentiary deficiencies and provide detailed records regarding Mrs. Moore's medical condition, her difficulties, and the unavailability of other caregivers.

### B. § 3553(a) Factors and Public Safety[6]

If the Court finds that there are extraordinary and compelling reasons warranting compassionate release, the Court must then also consider the § 3553(a) and public safety factors. 18 U.S.C. §§ 3553(a); § 3582(c)(1)(A)(ii).

Moore argues that his efforts at reconciliation with Mrs. Moore, rehabilitation from drug prevention, and reeducation from vocational programs and courses are factors which find for a compassionate release. Motion at 2. Moore claims that his few remaining months to serve also support his release, considering other compassionate releases with far longer remaining months such as *United States v. Jackson, Jr.*, No. 18-CR-5477-GPC, ECF No. 47 (S.D. Cal. Jun. 22, 2020). Motion at 3. Moore asserts that, like in *United States v. Rodriguez*, the § 3553(a) and public safety factors can still favor "release for defendant[s] with past series of convictions for drug and firearm offenses, deeming [they are] not a danger to the community, and further noting that the defendant has a home where he can self quarantine." *Id.* at 4 (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020)).

The government argues that Moore's convictions are "unquestionably serious," that Moore's "sold drugs to a twenty-year-old man the day before the man died from an

---

[6] Because Moore has not established extraordinary and compelling reasons, the Court need not consider whether the § 3553(a) factors weigh against compassionate release or whether he is a danger to others or the community at large. However, the analysis for these elements is being included for comprehensiveness.

overdose," and that Moore's "criminal history, which includes…domestic violence…child abuse conviction, and a number of battery arrests, is also troubling." Response at 8. The government claims that the Court's sentencing already considered the factors relevant to Moore's circumstances, that the remaining time is significant, and that general deterrence favors Moore's continued custody. *Id.*

The Court must consider whether the sentence served reflects the seriousness of the offense committed and promotes respect for the law. The § 3553(a) factors include: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment. 18 U.S.C. § 3553(a). The public safety factors are similar but additionally include considering whether the offense is a crime of violence, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Moore was convicted of Possession of Ammunition as a Felon and Possession of Methamphetamine with Intent to Distribute and has two prior convictions for drug trafficking, child endangerment, and domestic violence. Pre-Sentence Report at 11. Other criminal conduct includes drug offenses, incidents of battery, assault, and DUIs. *Id*. at 12-13. The Court initially imposed a 70-month sentence, which was a downward departure from the Guidelines range of 87-108 months.[7] *See* ECF No. 50 at 1. The Court amended Moore's sentence downwards to 66 months and 13 days to credit the 107 days Moore spent in county custody. ECF No. 71. The BOP website currently indicates that Moore's expected release date is April 12, 2026. There is a debate between the parties on what percentage of his sentence Moore has served. *Compare* Motion at 3 (stating as of

---

[7] Moore was placed in a Criminal History Category of I, which resulted in the Guidelines range.

1  September 2024 Moore served 89.5% of his sentence); *with* Response at 8 (stating as of
2  March 2025 Moore has over one-year remaining on his custodial sentence).  Regardless,
3  by both estimations, parties agree Moore has served most of his sentence.

4       Moore's case is only supported by some elements of the cases he cites.  It is true
5  that Moore has completed more of his sentence than the defendant in *Jackson Jr.* who
6  was released despite being incarcerated for "only 27 percent of his sentence." *Jackson,*
7  *Jr.*, No. 18-CR-5477-GPC at *10.  Likewise, it is true that Moore has a home
8  confinement plan approved by the Probation Office, Motion at 4, just like the defendant
9  in *Rodriguez* who was "not a danger to the community during this pandemic because he
10 has a home to return to…and an adequate reentry plan, as verified by the Probation
11 Office." *Rodriguez*, 451 F. Supp. 3d at 406.  However, Moore's case has a major
12 departure from both cases he cites.  In *Jackson Jr.*, this Court found that an early release
13 was acceptable because "[a]lthough Mr. Jackson has a lengthy criminal history, each of
14 his offenses have been non-violent." *Jackson, Jr.*, No. 18-CR-5477-GPC at *9-10.
15 Similarly, in *Rodriguez*, the court found that "[n]othing in [defendant's] record suggests
16 that he has been violent… there was no evidence that he used the gun during the drug
17 transactions or at any other time." *Rodriguez*, 451 F. Supp. 3d at 406-7.  Unlike both
18 defendants who had non-violent offenses, Moore's criminal history involves a record of
19 violent crimes, including domestic violence, battery arrests, drug abuse, and discharging
20 a firearm during a road rage incident.  Pre-Sentence Report at 11-13.

21      The Court considers the totality of the circumstances as presented with respect to
22 Moore.  Those circumstances include Moore's averments regarding his family situation,
23 plan for home confinement, "low recidivism" status, "low risk" General Pattern score,
24 and rehabilitation through good behavior, vocational programs, courses, and N-RDAP.
25 Motion at 2, 4.  The Court also considers the government's averments regarding Moore's
26 violent criminal history, general deterrence, and already downwards departures in

sentencing. Response at 8. The Court considered many circumstances in Moore's life at his initial sentencings, and the resulting 66-month term represented a balancing of the seriousness of the offense with Moore's specific characteristics. ECF No. 56. However, at the time of sentencing in December 2022, the Court did not know that Moore and Mrs. Moore would repair their relationship, or that Mrs. Moore would allegedly experience medical complications and falls in 2023. Motion at 2. Given that Moore has demonstrated significant rehabilitation such that he is no longer a danger to the public, that there are unique medical circumstances Moore and Mrs. Moore have entered, and that Moore has served most of his sentence, granting compassionate release would not undermine the principles of respect for the law or general deterrence.

Accordingly, the Court does not find that § 3553(a)'s sentencing factors would preclude a reduction of sentence in the event that Moore is able to demonstrate extraordinary and compelling reasons warranting compassionate release.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c) **WITHOUT PREJUDICE**.

Dated:  August 13, 2025

Hon. Gonzalo P. Curiel
United States District Judge